**UNITED STATES of America, Appellee,**

v.

**Russell W. BARRETT, et al., Appellants.**

**No. 15090.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1971.

Decided May 5, 1971.

William Bruce Hoff, Parkersburg, W. Va. (William W. Gracey, Parkersburg, W. Va., on brief) for appellants.

Ronald R. Glancz, Atty., Dept. of Justice, (L. Patrick Gray, III, Asst. Atty. Gen., and Robert V. Zener, Atty., Dept. of Justice, and Paul C. Camilletti, U. S. Atty., on brief) for appellee.

Before BRYAN and BUTZNER, Circuit Judges, and MILLER, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Under the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 et seq., the Parkersburg (West Virginia) Housing Authority entered into the requisite contracts to secure the aid of the United States in the construction of a low-rent housing project. This suit was brought in Federal court by the United States[1] to confirm the exercise of the prerogative it reserved in the contracts, to take over completion of the project whenever the right of the Authority to enter into the agreements is questioned.

Such a challenge to the legal status of the Authority was issued in a State court action initiated by Russell W. Barrett, et al., residents of the City of Parkersburg. The charges levelled were that the Authority had no cognizable existence, either de jure or de facto, and therefore the project contracts were invalid. A judicial declaration to that effect and an injunction against construction of the project were sought in a West Virginia Circuit Court. Suit was then instituted in Federal court by the United States to enjoin prosecution of the State court action.

---

1. To avoid confusion and repetition in referring to the municipal and Federal agencies, we have used "Authority" as meaning the City's agency and "Government" as including all of the agencies of the United States involved in effectuating the Act.

The District Court upheld the Government's position—that it legally undertook completion of the project after the Authority's contracting powers had been assailed in the State suit. The State court plaintiffs were enjoined by the District Court from maintaining their action on the grounds that the pending litigation severely hampered obtaining private capital for the Federal project. On the appeal from this decision, we affirm.

The scheme of the Act was closely followed by the City of Parkersburg. First, it signed a Cooperation Agreement on January 2, 1968 with the Authority, in which the latter covenanted to open negotiations with the Government for loans and annual contributions for building 300 low-rent housing units. In this instrument the City also promised to extend certain privileges necessary for the operation of the project. The undertaking was part of the Government's "turnkey" program. It is best described in the Government regulations, 24 CFR 1520.6(b), as follows:

"Under the 'turnkey' technique, a private developer or builder, who has a site or an option, or can obtain one, can approach the Local Authority with a proposal to build [low-rent housing] in accordance with plans and specifications prepared by his own architect and the usual commercial standards of quality and workmanship. If the proposal is acceptable, they will then enter into a contract under which the Local Authority agrees to purchase the completed property. This contract is backed by [Government] financial assistance commitment to the Local Authority, thereby enabling the developer to secure commercial construction financing in his usual manner. * * *"

Next, a local contractor, Theodore Morlang, was selected as the project developer, and approved by the Government. He entered into a sales and purchase contract with the Authority.

Section 9 of the Act, 42 U.S.C. § 1409, authorizes the Government to "make loans to public-housing agencies to assist the development, acquisition, or administration of low-rent-housing or slum-clearance projects by such agencies". Provision is made in Section 10(a), 42 U.S.C. § 1410(a), for "Annual Contributions" by the Government to public housing agencies to allow consummation of the project undertaking. On June 19, 1968 the Authority executed with the Government an Annual Contributions Contract.

Section 22(a), 42 U.S.C. § 1421a(a), allows the Government to assume the title to a project in the event of a "substantial default" by the Authority. Inclusion of the following provision in an Annual Contributions Contract—and here it was included—is permitted:

"upon the occurrence of a substantial default in respect to the covenants or conditions to which the public housing agency is subject (as such substantial default shall be defined in such contract), the public housing agency shall be obligated at the option of the * * * [Government], either to convey title in any case where, in the determination of the * * * [Government] (which determination shall be final and conclusive), such conveyance of title is necessary to achieve the purposes of this chapter, or to deliver possession to the * * * [Government] of the project, as then constituted, to which such contract relates: * * *" 42 U.S.C. § 1421a(a) (1).

Substantial default was defined in the instant contract as follows:

" * * * if the power or right of the Local Authority to * * * enter into the Contract of Sale is drawn into question in any legal proceedings, * * * the occurrence of any such event, if the seller is not in default, shall constitute a Substantial Default * * *

and, in such case, the Government will continue the undertaking of the Project and will take delivery of such right, title or interest in the Project as the Local Authority may have and perform such * * * Contract of Sale * * *. The provisions of this paragraph are made with, and for the bene-

fit of, the seller and his assignees who will have been specifically approved by the Government prior to such assignment."

In this contract and in the contract of sale between the developer, Theodore Morlang, and the Authority, the latter represented that it was a duly and legally organized body corporate and politic, and empowered to execute the agreement. The contract of sale stipulated that a breach of the warranty would be deemed a substantial default under the sales contract and also under the Annual Contributions Contract. Such a default would occur, according to the sales contract, "if the power or right of the Purchaser [the Authority] to enter into this Agreement is thrown into question in any legal proceeding".

As the institution of the action in the State court on July 19, 1968 questioned the power and right of the Authority to contract with the Government, the latter declared the Authority in default pursuant to the terms of the contracts. The Authority was then required to assign its interest in the contract of sale to the Government. The assignment was executed on December 6, 1968. Morlang, the project developer, was asked to accept the Government as his obligor in the stead of the Authority. This he did by attornment on December 20, 1968. The consequences were that the Government thereupon became bound to support completion of the housing project and to purchase it from Morlang thereafter.

The contention of the appellants is that the power of the Government to take over the project was dependent upon the validity of its contracts with the Authority. If they were not valid, then the Government had no right to require transfer of the project pursuant to the substantial default provisions. The thrust of the accusation is that the Authority was illegally established and therefore incapable of executing a binding contract.

Plaintiffs point to the creation in 1937 of an Authority under a 1933 Act of the West Virginia legislature, W.Va.Code of 1937 § 1409(58). This statute authorized a municipality to create an Authority, as was done in Parkersburg. The provisions of the 1933 Act, we are told, were superseded by an Act passed in 1941, which is still in effect. W.Va.Code § 1409(58). The later Act, it is said, recognized the *original* Authority, continued it in being indefinitely beyond 1941 and countenanced only one Authority in a city. From this the appellants argue that the Authority now contracting with the Government, which was named in April 1967, has no legal existence. Plaintiffs, therefore, conclude that only the original Authority created in 1937 could contract with the Government, and that the present or second Authority is wholly impotent, inasmuch as there was no legislative provision for two Authorities.

■ The answer to this contention is readily summarized. The municipal council of Parkersburg purported to act in April 1967 under the 1933 West Virginia statute in setting up the present Authority. The 1941 statute vested in the State legislature the power to create an Authority, limiting the municipality to the appointment of members, but it expressly preserved the existence of any Authority established under the 1933 law. We construe the action of the municipal council in April 1967 as not creating an additional Authority, but rather reactivating the original. That this was the council's intention is confirmed by the fact, as the record discloses, that at the time of its April action there were no incumbents in the membership of the Authority created in 1933, the last appointment apparently having been made in 1940, to expire in 1946. The council simply filled these positions.

In fine, we think that the Parkersburg Housing Authority was a legal entity capable of executing the instant contracts. Accordingly, the Government was fully authorized to take over the Parkersburg project, and we approve its actions in this regard.

■■ The suit in the State court jeopardized advancement of the project by clouding the financial responsibility

of the Authority in the eyes of creditors and subcontractors. It thus tended to defeat the purpose and policy of the Congress in furnishing low-rent housing to citizens deserving of this help. 42 U.S.C. § 1401. The District Court recognized these threats, and rightly enjoined prosecution of the State court proceeding. We have no doubt that a Federal court may enjoin State court actions which imperil the "superior federal interest" embodied in the United States Housing Act and the Parkersburg project. Leiter Minerals, Inc., v. U. S., 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).

Affirmed.