MOBILE HOUSING ENVIRONMENTS, a partnership, Plaintiff,

v.

BARTON AND BARTON et al., Defendants and Third-Party Plaintiffs,

v.

BRIGHTON EXCAVATING, INC., et al., Third-Party Defendants.

Civ. A. No. C–3844.

United States District Court,
D. Colorado.

June 24, 1977.

John M. Law and Fenton A. Bain, Denver, Colo., for plaintiff.

Roger P. Thomasch, Roath & Brega, Denver, Colo., for defendants.

Robert H. Sonheim, Sonheim & Helm, Arvada, Colo., for Laughlin Excavating, Inc.

Edward A. Brown, Daniel, McCain & Brown, Brighton, Colo., for Brighton Excavating.

## FINDINGS OF FACT AND CONCLUSIONS RE: "TURNKEY"

CHILSON, Senior District Judge.

Plaintiff seeks to recover damages for alleged improper construction of a mobile home park under a construction contract. There are a number of issues raised by the parties which must be determined before the complete disposition of this controversy. Counsel for plaintiff and defendants requested that certain of the issues be sepa-

rately determined and to that end entered into the following stipulation.

"Undersigned counsel have met and have reviewed the case in accordance with the Court's instructions that they determine whether it is necessary to amend the existing pretrial order and whether it would in their view be productive to have the Court resolve specified issues affecting liability prior to a complete trial of all remaining issues.

"As a result of their meeting counsel suggest the following:

a. That the Court first issue findings of fact and conclusions of law with respect to the meaning of the term 'turnkey construction job' as that term is embodied in the contract documents.

(1) It is the position of plaintiff that the parol evidence rule would operate so as to bar extrinsic and parol evidence as to the meaning of that term.

(2) It is the position of Barton that the intended meaning of the term as used in the contract documents is not determinable from the documents themselves and the parol evidence rule therefore should not be applied to bar extrinsic and parol evidence as to the meaning thereof.

(3) It is suggested that the foregoing issue concerning the application of the parol evidence rule be submitted to the Court upon written briefs. Plaintiff's opening brief to be filed within fifteen (15) days from the entry of an order approving the within stipulation; answer briefs of the defendant and third party defendants to be filed on or before fifteen (15) days from the date of receipt thereof; plaintiff's reply brief to be filed on or before five (5) days from the date of receipt of the answer briefs.

(4) In the event the Court determines that the parol evidence rule applies so as to bar extrinsic evidence as to the meaning of the term 'turnkey construction job' the Court shall enter its ruling as to the meaning thereof. Depending upon the Court's ruling, a disposition of the case by the parties may result at that juncture.

(5) In the event the Court determines that the parol evidence rule does not apply so as to bar extrinsic and parol evidence as to the meaning of said term, the parties shall submit a pretrial order for a trial restricted to a determination of the meaning of the term 'turnkey construction job' as used in the contract documents. The pretrial order shall be submitted to the Court within twenty (20) days after the issuance of the Court's determination that evidence will be heard and counsel shall be ready for trial within thirty (30) days from the date of the entry of the pretrial order.

b. Depending upon the ruling of the Court as to the definition of 'turnkey construction job' a disposition of the case by the parties may result at that juncture.

c. In the event that no disposition by the parties is reached, the next issues to be tried would be those issues raised by plaintiff's contentions as to the meaning and application of the contract provisions relating to the 'unconditional guarantee' which is set forth in the contract documents. The issues relative to the unconditional guarantee would relate to the effect of any notices given to defendants, to the period of the guarantee (i.e., its commencement and termination) and to a determination of the type of defects to which the guarantee would extend.

d. It is suggested that third party defendants be required to participate in all proceedings described above, inasmuch as the rights, duties and obligations which exist between Barton and the third party defendants are identical to those which will be determined in the findings and rulings to be made by the Court.

e. If resolution of the foregoing issues does not result in a disposition of the case, an amended proposed pretrial order would be required to be submitted by counsel and the matter set for

prompt trial on all remaining issues of liability and damages."

The Court approved the stipulation and the procedures therein were adopted by the Court.

There is now before the Court as the first issue, the meaning of the term "turnkey construction job" as that term is embodied in the contract documents. Counsel have submitted their briefs which the Court has read and considered and the Court is now prepared to rule on this issue.

## FINDINGS OF FACT

In the spring of 1970, Macco Corporation and Leadership Housing Systems undertook to develop a mobile home park in the City of Federal Heights, Colorado. For this purpose, Leadership and Codeca on April 28, 1970, entered into a written agreement and an amendment thereto whereby Codeca agreed to construct the mobile home park. The construction contract executed by Leadership and Codeca provided that Codeca, as contractor, would:

"furnish all labor, material, equipment, tools, machinery, facilities and everything else required for the prompt turn-key construction of a mobile home park containing not more than 320 mobile home spaces, all of which shall be constructed in accordance with the general plans and the approved plans and specifications, . . .",

and that Codeca would

"cause plans and specifications for the improvements to be prepared at its cost and expense in accordance with the general plans and the quality provisions of paragraph 11 hereof by a licensed architect and shall submit said plans and specifications to owner for its approval within ten days after the execution of this contract. . . . In the event owner approves said plans and specifications, contractor shall retain at its sole cost and expense, an independent qualified engineering firm to supervise and inspect the development and construction of the mobile home park."

The amendment to this agreement provides:

"That the engineering costs are to be considered a part of the development costs and will not be an expense of contractor."

The plans which Codeca caused to be prepared and which were approved by Leadership provided for 250 mobile home spaces.

In August of 1970, after substantial work had been done by Codeca, the plaintiff purchased the property contingent upon entering into a contract with Codeca for the completion of the mobile home park in accordance with the plans which had been prepared by Codeca in connection with its contract with Leadership.

The contract for completion was executed by Barton and Barton instead of Codeca, but Codeca guaranteed Barton and Barton's performance. Richard A. Barton represented both Codeca and Barton and Barton as shown by his execution of the Codeca contract with Leadership, his execution of Barton and Barton's contract with the plaintiff, and Codeca's guarantee of Barton and Barton's contract with plaintiff.

The Barton and Barton contract required that it furnish a performance bond and such bond was furnished by Barton and Barton with United States Fidelity and Guaranty Company as the surety.

Richard A. Barton by his affidavit filed herein, states "For bonding purposes, Barton and Barton Company joined Codeca, Inc., as general contractor."

The construction contract between Barton and Barton and the plaintiff states:

"Contractor agrees to provide a turn-key construction job completed on or before November 1, 1970, consisting of all those improvements and fees required by the City of Federal Heights and offsite and onsite improvements including, but not limited to, those improvements shown upon the plans and specifications for a 250 space mobile home park which plans and specifications are to be signed concurrently herewith by the parties hereto."

## QUESTION

The question presented to the Court in this phase of the proceedings as stated in the stipulation is "the meaning of the term 'turn-key construction job' as that term is embodied in the contract documents."

Plaintiff contends that the term has a well-defined meaning established through legal precedent and that a turnkey contractor is responsible for and assumes all risk associated with the function of the project being constructed, including the responsibility for and the assumption of all risk of design of the project.

Further, that since legal precedent has established a well-defined meaning of this term, parol and extrinsic evidence is not admissible to vary or change the meaning of the term as established by legal precedent.

Defendants deny that the term "turn-key construction job" as used in the contract documents has any well-defined meaning, and assert that the meaning of the term as used by the parties imposes no responsibility upon the contractors for any design defects which may exist in the plans and specifications acquired by the plaintiff from Leadership. Defendants further assert that they are entitled to introduce parol and extrinsic evidence as to the meaning of that term as used in the contract documents.

## CONCLUSIONS

■ The Court has considered the case law cited by counsel and case law developed by the Court's independent research and concludes that the term "turn-key construction job" under the applicable case law imposes upon the contractor the responsibility for providing the design of the project and ·responsibility for any deficiencies or defects in design, except to the extent that such responsibility is specifically waived or limited by the contract documents.

The cases which the Court has examined and considered in arriving at the above conclusion are:

*Ebasco Services Inc. v. Pennsylvania Power & Light Co.*, 402 F.Supp. 421 (F.D.

Pa.1975); *Securities and Exchange Comm'n. v. Senex Corp.*, 399 F.Supp. 497, 500 n. 1 (E.D.Ky.1975); *Glassman Const. Co. v. Maryland City Plaza, Inc.*, 371 F.Supp. 1154 (D.Md.1974); *Robbins v. C. W. Myers Trading Post, Co.*, 253 N.C. 474, 117 S.E.2d 438 (1968); *Waddle v. Gammel*, 305 P.2d 559 (Okl.1956). See also, *Martin v. Vector Co., Inc.*, 498 F.2d 16, 19 (1st Cir. 1974); *United States v. Barrett*, 442 F.2d 642, 644 (4th Cir. 1971); *Resident Advisory Bd. v. Rizzo*, 425 F.Supp. 987, 996 (E.D.Pa. 1976).

■ By specific language of the original contract, Codeca assumed the responsibility for the employment of an architect and the preparation of the plans and specifications at Codeca's expense. This is entirely consistent with the Court's conclusion that the term "turnkey" imposes upon the contractor the responsibilities for design and the assumption of risks of defects and deficiencies in the design. We note no provision of the Codeca agreement which limits Codeca's responsibility with respect to design or any damages resulting from defects or deficiencies in design.

Taking into consideration the relationship between Codeca and Barton and Barton, as revealed by the contract documents, it would be inconsistent to give to the word "turnkey," as used in the Barton and Barton contract, a different meaning or construction from that given in the Codeca contract. We conclude that the term "turnkey," as used in both the Codeca and Barton and Barton contracts, imposed upon both contractors the responsibility for any damages resulting to the plaintiff from defects or deficiencies in the design.

When Barton and Barton undertook to complete the project as a "turnkey" project, Barton and Barton assumed the responsibility for the design and assumed the risks of any defects or deficiencies in the design, although the design had been established by the plans which Codeca had caused to be prepared by an architect before Barton and Barton entered into the contract for completion.

There is nothing in the Barton and Barton contract which limits its responsibility and liability for design of the project as a "turn-key construction job."

■ We conclude that the contract documents are not ambiguous in the foregoing respects and that parol and extrinsic evidence as to the meaning of the term "turn-key" is inadmissible.

We further conclude that both Codeca and Barton and Barton are responsible for the design of the project and assumed the risk of any defects or deficiencies in the design resulting in damages to the plaintiff.