SEAVIEW HOSPITAL, INC., Appellant,

v.

MEDICENTERS OF AMERICA, INC., Appellee.

No. 1291..

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1978.

Rehearing Dismissed Aug. 1, 1978.

Charles N. Cartwright, Prichard, Peeler, Cartwright & Hall, Corpus Christi, for appellant.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit by Medicenters of America, Inc., hereinafter called "Medicenters", against Seaview Hospital, Inc., hereinafter called "Seaview", to recover certain sums of money allegedly due under a written contract. Trial was to a jury. Judgment was rendered on the verdict for Medicenters in the amount of $25,002.00, with interest thereon at the rate of 6% per annum from August 1, 1973 ($6,047.48) to August 6, 1977 (date of judgment), plus $10,000.00 for attorney's fees with interest at the rate of 9% per annum on all said sums of money from date of judgment until paid, and for, an additional sum of $3,000.00 as attorney's fees in the event Seaview appeals the judgment to the Court of Civil Appeals. The judgment further decreed that Seaview take nothing against Medicenters on the cross action filed by it. Seaview has perfected an appeal from the judgment to this Court.

Medicenters was a licensed general contractor that was primarily concerned with the building of hospitals. As such, it did nothing more than arrange for the preparation of plans and specifications for the affected hospital, and would, if its bid was accepted, build the hospital pursuant to a "turnkey" contract. It did not perform architectural or engineering services itself, but procured such services from duly qualified and licensed architects and engineers. The cost of such services was included in its "turnkey" bid.

Seaview, in August, 1972, sent Medicenter a bid solicitation for a "turnkey development" of a hospital. Included in the bid solicitation was a form entitled "DEVELOPER'S TOTAL TURNKEY PRICE". Medicenters then submitted a written "turnkey proposal" which, among other provisions, included in the page entitled "DEVELOPER'S TOTAL TURNKEY PRICE" an exact reproduction of the form contained in the bid solicitation. That form, with the appropriate blanks filled-in by Medicenters,

with respect to the issues here presented, reads:

"II. Architectural and Engineering Services—Phases I, II and III described below (the amount that is to be included in the letter of intent)      $ 80,268.00

III. Construction Supervision—Engineering and Architectural      $ 18,000.00
     TOTAL DEVELOPER'S COST      $1,700,000.00

If owner fails to proceed with total development, the developer will be reimbursed in accordance with the following schedule of reimbursement of that given phase of development. The phase fee is included in the Total Developer's Cost.

Phase I —Feasibility analysis and schematic drawings of site, hospital and office —Time: 15 days      $ 18,000.00

Phase II —Preliminary plans and outline specifications— Time: 15 days      $ 40,000.00

Phase III—Final plans and specifications with final construction contract cost (approved by all National, State and local licensing boards)—Time: 60 days      $ 22,268.00

A construction contract concerning the actual building of the hospital was never entered into by the parties, but it was agreed in writing for Medicenters to proceed with the work described and outlined in paragraph II relating to Phases I, II and III, above-quoted. That agreement, which authorized only the work described in Phases I, II and III, totalling $80,268.00 which is the exact sum of money set out in paragraph II, is the contract here involved and will henceforth be referred to as the "contract".

After the work contemplated by Phases I and II was completed, Seaview paid Medicenters the contract amounts of $18,000.00 and $40,000.00, respectively. After Phase III was substantially finished, Seaview abandoned the project, and refused to pay Medicenters the money which it (Medicenters) claimed was due for the work required by Phase III, together with additions thereto which were requested by Seaview. Suit was filed on January 7, 1975.

Medicenters, in its trial petition, among other allegations, alleged that when the final plans and specifications (Phase III) were sent to Seaview, its president request-ed changes which were not contemplated by the approved preliminary drawings and the scope of the work at the end of Phase II, and that Medicenters attempted to comply with the requested changes. It was further alleged: that on July 30, 1973, Seaview, by letter, instructed Medicenters not to proceed with any further activity regarding the development and construction of the planned hospital until further notice; that the phrase "until further notice" meant that Seaview had abandoned the project; that the contract provided that Seaview would pay Medicenters $22,268.00 for the work outlined in Phase III; and that the requested changes required extra work in the sum of $3,134.00. Medicenters sought a recovery of $25,402.00, plus interest thereon, plus reasonable attorney's fees.

Seaview, in its answer, among other defenses, pled:

"VI.

Defendant would further show this Honorable Court that the special contract between the Plaintiff and the Defendant herein constitutes an illegal contract because the Plaintiff, Medicenters of America, Inc., had not complied with the requirements of Article 249a and Article 3271a of the Revised Civil Statutes of the State of Texas in that neither Medicenters of America, Inc., nor any of its agents, servants and/or employees were duly licensed to practice the professions of architecture and/or engineering in the State of Texas. Therefore, the said Plaintiff, Medicenters of America, Inc., contracted to perform services in the State of Texas when it was legally precluded from performing such services."

Seaview also filed a cross action whereby it sought to recover back the $58,000.00 which it had previously paid to Medicenters for the work required by Phases I and II. The reasons pled in support of such a recovery were the identical reasons pled by it in its second amended answer, above-quoted.

Seaview filed a motion for judgment non obstante veredicto, wherein it was alleged

that neither Medicenters nor any of its employees, at the time of execution of the contract or at the time of performance thereunder, were licensed in Texas to practice either the profession of architecture or the profession of engineering, and that, as a consequence, the contract was void as being in violation of "Articles 3271A and 249A of the Revised Civil Statutes of the State of Texas". The motion was overruled. Seaview attacks that ruling in four points of error. It contends that the trial court erred in overruling the motion "because the uncontroverted evidence" showed that on the date the contract was executed and at all times during its performance, neither Medicenters nor any of its employees were: 1) licensed to practice either the profession of architecture or the profession of engineering in Texas; 2) licensed as professional engineers in Texas; 3) licensed as professional architects in Texas. For those reasons, Seaview claims that, since the contract sued on is illegal and void, a take nothing judgment should have been rendered on the action brought by Medicenters. Seaview further asserts (point 4) that it was error for the trial court to refuse to render judgment in its favor in the amount of $58,000.00, sought to be recovered in its cross action "because the evidence conclusively shows" that such money was paid under the terms of an illegal contract.

Tex.Rev.Civ.Stat.Ann. art. 249a (1973), insofar as the same applies to this case, in summary, provides that no person shall practice architecture in Texas unless he is first duly licensed by the Texas Board of Architectural Examiners; defines the "practice of architecture" as the "performing or doing, or offering or attempting to do or perform any service, work, act or thing within the scope of the practice of architecture"; exempts from the licensing requirements employees of registered architects who perform work "under the instructions, control or supervision of such architect"; further provides that "a firm, partnership or a corporation may engage in the practice of architecture, as defined herein, in this State, provided that such practice is actually carried on, conducted and per-

formed only by persons to whom registration certificates have been duly issued under the provisions of this Act"; and declares that the statute shall not apply "to any person or firm who prepares plans and specifications for the erection or alteration of a building, or supervises the erection or alteration of a building by or for other persons than himself, or themselves, but does not in any manner represent himself, herself, or themselves to be an architect, architectural designer, or other title of profession or business using some form of the word 'architect' ".

Tex.Rev.Civ.Stat.Ann. art. 3271a (1968) provides that only licensed persons shall engage in the practice of engineering. The phrase "practice of engineering" is defined as "any service or creative work, either public or private, the performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical, or engineering sciences to such services or creative work". The statute prohibits any compensation being paid to any unlicensed person "for performing, offering or attempting to perform any service, work, act or thing which is any part of the practice of engineering". The statute, however, exempts from the provisions thereof any employee or subordinate of a person holding a Certificate of Registration if his practice does not include "responsible charge of design or supervision". Also, the statute specifically authorizes a corporation to "engage in the practice of professional engineering in this State, provided such practice is carried on by only professional engineers registered in this State".

It is Seaview's position in this appeal that Medicenters does not have a cause of action against it because the contract which was executed was void since neither Medicenters nor any of its employees were licensed in this State as either architects or engineers. It is Medicenters' position that it is not illegal in Texas for a corporation, such as Medicenters, to enter into a contract, one portion of which calls for the corporation to *arrange for* but *not to perform* the architec-

tural and engineering services incident to a turnkey development contract. Seaview says that the contract provided that Medicenters would *perform* architectural and engineering services. Medicenters says that the contract simply required that it *provide* such services, and that there is a vast difference between a contract to *provide* services and a contract to *perform* the same services.

No one claims that the contract is ambiguous. The controlling question is whether the contract required Medicenters to *perform* architectural and engineering services, or either, or whether it required Medicenters to *furnish* such services.

■ A contract for engineering services to be performed by a person who is prohibited from practicing engineering in Texas by Tex.Rev.Civ.Stat.Ann. art. 3271a (1968) is void, and being void, is unenforceable. *M. M. M., Inc. v. Mitchell*, 153 Tex. 227, 265 S.W.2d 584 (1954). The same rule applies where the contract for architectural services is to be performed by a person who is not licensed under Tex.Rev.Civ.Stat.Ann. art. 249a (1973) to practice architecture in this State. *Mabry v. Priester*, 161 Tex. 173, 338 S.W.2d 704 (1960). The purpose of each statute is to prevent the unlicensed, unauthorized practice of engineering and architecture in Texas.

It is conclusively shown by the record that while Medicenters did in fact actually perform considerable work incidental to the development project, neither it nor any of its employees actually performed any architectural or engineering services in connection with the work called for in Phases I, II and III. All such work, which dealt with the preparation of a 1) feasibility analysis and schematic drawings of the site, hospital and office, 2) the drawing of preliminary plans and specifications, and 3) the drawing of final plans and specifications, was actually performed by firms of architects and engineers that were domiciled in the State of Tennessee. None of the firms were residents of Texas. However, all of the architectural and engineering work required by the contract was actually performed by either members of those firms who, individually, were duly licensed to practice architecture or engineering in the State of Texas at all times relative to the contract, or, such work was actually performed by the firm's employees under the direct supervision of such duly licensed architects and engineers.

It is undisputed that Seaview failed "to proceed with total development" of the project. Therefore, Seaview became obligated to "reimburse" to Medicenters, in accordance with the "schedule of reimbursement", the costs set out in the turnkey proposal, unless the contract is held to be illegal and void.

Since no claim was made that the contract sued upon is ambiguous and the controlling facts are either undisputed or have been established by stipulation, the construction of the contract was thus a question of law. We do not reach the argument made by Seaview in its brief that this is not a suit for reimbursement since the record shows that only $70,000.00 was paid to the architects and the amount sued for included approximately $13,000.00, which Medicenters' witness characterized as "out of pocket" expenses, and which Seaview apparently views as profit. The issues so argued are not before us in this appeal.

■ The law is well settled that where a contract does not specifically provide for an illegal mode of performance, it will be assumed that the parties contracted for a lawful performance; and, that when two constructions of a contract are possible, preference will be given to that which does not result in the contract being held void because of the violation of a statute. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146 (1947). On the basis of the judgment rendered by the trial judge in this case, the trial court necessarily concluded that the contract required Medicenters to *furnish* said services and did not require it to *perform* such services. There is, as asserted by Medicenters in its brief, a vast difference between a contract to "furnish" services and a contract to "perform" the same services. The word "furnish" requires a person to provide what is needed and implies the

provision of all essentials for performing a function; the word "perform" requires a person to carry out a function and implies action by the person in carrying out by him all essentials necessary to complete the action.

A general contractor, under the licensing statutes here involved, is not precluded from entering into a contract with the owner which provides that the contractor: will engage or hire architects and engineers who are duly licensed in Texas to prepare drawings, plans and specifications for a proposed development; will pay such professionals; and will be reimbursed by the owner for such professional charges so paid by the contractor. The stated objective of both statutes is to protect public health, safety and the general welfare by insuring that architectural and engineering work in this State be *performed* only by qualified persons who are duly licensed.

We hold that the contract between Seaview and Medicenters is valid and enforceable. The trial court rendered a correct judgment. All of Seaview's points are overruled.

The judgment of the trial court is AFFIRMED.