

# THE ATTORNEY GENERAL
## OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

July 24, 1990

Honorable D. C. (Jim) Dozier
Montgomery County Attorney
Montgomery County Courthouse
Conroe, Texas  77301

Mr. Charles E. Nemir, P.E.
Executive Director
Texas State Board of
  Registration for Professional
  Engineers
P. O. Drawer 18329
Austin, Texas 78760

Opinion No.  JM-1189 -

Re:   Authority of a com-
missioners court to award
"design/build" contracts
for construction of pub-
lic buildings on the
basis of competitive bids
and related questions
(RQ-1895)

Gentlemen:

Mr. Dozier advises us  that the commissioners court  of
Montgomery County is considering the construction of certain
public works through the  award of so-called  "design/build"
contracts.  His description of  the design/build concept  is
"the award  of  a  single contract  for  both  architectural
design and construction  to a single  contractor for a  lump
sum fee."

Mr. Dozier asks the following questions:

1.  Does the proposed design/build  procedure
comply with  the requirements  of  applicable
competitive bidding laws?

2.  In light of  article 664-4, V.T.C.S.  the
Professional Services  Procurement Act,  does
the    inclusion    of    architectural   design
services as a  component of the  design/build
contract violate the prohibition on award  of
professional services  through a  competitive
bidding process?

3.  Assuming the application of article 249a,
section 16, V.T.C.S. must the preparation  of
the required architectural plans and specifi-
cations precede competitive bidding to  serve
as a foundation for bid specifications or may

they be produced following award of a design/build construction contract?

Following receipt of Mr. Dozier's request, Mr. Nemir asked that our opinion consider these issues as they relate to professional engineering services governed by article 664-4, section 3A, V.T.C.S., and article 3271a, section 19(a), V.T.C.S.

The answer to these questions lies in an examination of the commissioners court's capacity to make the kind of contract you describe. Before we can ascertain the court's authority, however, it is appropriate to examine design/build construction contracts in closer detail.

The traditional design and construction services model has been described as a linear relationship between the architect, the owner of the project, and the contractor. Block, As the Walls Came Tumbling Down: Architects' Expanded Liability Under Design-Build/Construction Contracting, 17 John Marshall L.Rev. 1 (1984). This also describes the contractual relationship between the parties. In the traditional tripartite arrangement, the owner occupies the middle position, contracting with the architect and the contractor on either side. Id. The relationship is represented schematically as follows:

Architect ◄─────── Owner ───────► Contractor

Under this arrangement, no privity of contract developed between the architect and contractor. The architect is described as having a fiduciary relationship with the owner and acting as a channel of communication with the contractor and arbitrator of any disputes. Id.

The design/build concept is a significant departure from the traditional arrangement. Under the design/build concept, the owner contracts with a single party for both the design and construction of the entire project. Id. The single party may be either the architect/engineering firm, the contractor, or both acting in tandem as a joint venture. Id.; Canterbury, Texas Construction Law Manual § 6.09 (1981); Practicing Law Institute, Construction Contracts 1985, 33-36 (1985). Viewed schematically, this is how the relationship appears:

## Owner

↓

## Design/Build Team
### Architect/Engineering firm and/or Contractor

See Practicing Law Institute, supra. The entity contracting with the owner undertakes either to design and build the entire project using the owner's financial resources and present the owner with a finished product or to present the owner with the finished product on a "turn-key" basis.[1] Block, supra, at 8; see, e.g., Seaview Hosp., Inc. v. Medicenters of America, Inc., 570 S.W.2d 35 (Tex. Civ. App. - Corpus Christi 1978, no writ).

The design/build approach to construction contracting offers the distinct advantages of reducing the time necessary to negotiate a contract for the entire project, reducing the time required to complete the project, and affording the owner considerable flexibility in the ultimate design of the project. See Grant, A New Look at Design/Build, 7 The Construction Lawyer 3 (April 1987). However, the design/build method also has its disadvantages. For example, the arms-length relationship between the design professional and the builder is eliminated. Id. The traditional contracting method delegates various functions to different contractors, creating what has been called a "healthy tension" and installing a check-and-balance mechanism into the process. Id. By combining the design and construction functions, the design/build contract is said to make the architect less of an agent for the owner since he is essentially acting in partnership with the builder. Practicing Law Institute, supra.

---

1. A "turn-key" project is one in which the contractor agrees to complete the construction process to the point of readiness for occupancy, assuming responsibility for design of the project and for all risks, unless such responsibility is waived or limited by contract. See Mobile Hous. Env'ts v. Barton & Barton, 432 F.Supp. 1343, 1346 (D. Colo. 1977); Gantt v. Van der Hoek, 162 S.E.2d 267, 270 (S.C. 1968). At the time of occupancy, all that is required of the buyer is that he simply "turn the key" to open the door. See Glassman Const. Co. v. Maryland City Plaza, Inc., 371 F.Supp. 1154, 1159 (D. Md. 1974).

The threshhold issue underlying  each of the  questions is whether  a  commissioners court  may,  on behalf  of  the county,  enter  into a  construction contract  that  includes architectural  services on the basis of competitive  bidding. Because the Professional Services Procurement Act,  V.T.C.S. article 664-4, prohibits the procurement of architectural or engineering  services  through  competitive  bidding,  we conclude that  a commissioners  court does  not possess  the authority  to  award  a  design/build  contract  for  the construction of a  public work on  the basis of  competitive bids where architectural or engineering services comprise  a component of the contract.

The  authority  of  the  commissioners  court  to  make contracts on  behalf  of  the  county  is  subject  to  well established rules.  It is  axiomatic that the  commissioners court's  authority  is  limited  to  that  conferred  either expressly  or by  necessary  implication  by the  constitution and laws of the state.  <u>Childress County v. State</u>, 92 S.W.2d 1011, 1016 (Tex. 1936); <u>Jack  v. State</u>, 694 S.W.2d 391,  397 (Tex. App. - San Antonio 1985, writ  ref'd n.r.e.).  Con-tracts made in violation of statute are void and not subject to ratification by the commissioners court.  <u>Jack v.  State</u>, <u>supra</u>.

Section 3 of the Professional Services Procurement  Act provides the following:

> No  state  agency,  political  subdivision, county,  municipality,  district,  authority  or publicly-owned utility of the State of  Texas shall make any  contract for,  or engage  the professional  services  of,  any  licensed physician, optometrist,  surgeon,  architect, certified public  accountant, land  surveyor, or  registered  engineer,  or  any  group  or association thereof, selected on the basis of competitive bids submitted for such  contract or for  such services  to be  performed,  but shall select  and  award such  contracts  and engage  such  services  on  the  basis  of demonstrated  competence  and  qualifications for the type of  professional services to  be performed and at fair and reasonable  prices, as long as  professional fees are  consistent with  and  not  higher  than  the  published recommended practices and fees of the various applicable professional  associations and  do not exceed the maximum provided by any  state law.

Parsing this provision to its essential elements, section 3 reads: "No . . . county . . . shall make any contract for, or engage the professional services of, any licensed . . . architect . . . or registered engineer . . . selected on the basis of competitive bids . . . , but shall select and award such contracts and engage such services on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices."

"Professional services" are declared by the act to be, among other things,

> those within the scope of the practice of . . . architecture . . . or professional engineering as defined by the laws of the State of Texas or those performed by any licensed architect . . . or professional engineer in connection with his professional employment or practice.

V.T.C.S. art. 664-4, § 2. The act thus prohibits the procurement through competitive bids of services within the scope of the practice of architecture or engineering, even though the contract may not call for the services of a licensed architect or registered engineer.[2] Contracts for such services must be made in accordance with the procedures described in section 3A of the act. Contracts made in violation of any of the provisions of the act are declared void. Id. § 4.

A commissioners court, or for that matter any entity subject to article 664-4, is thus prohibited from awarding a contract for architectural services, engineering services, or any other service specified in the act, on the basis of competitive bidding. Cf. Attorney General Opinion JM-282 (1984) (distinguishing contracts for the construction of a building and contracts for the planning of the construction of a building; the former are subject to competitive bidding

---

2. Architectural and engineering plans and specifications for certain public works of a specified cost must be prepared only by architects and engineers registered with the state. See V.T.C.S. arts. 249a, § 16 (architectural plans for public buildings whose construction costs exceed $100,000); 3271a, § 19 (engineering plans for public works whose cost is more than $8,000).

while the latter, which call for professional or consultant services, are not). It follows that a commissioners court lacks the authority to make a contract for the construction of public works under the "design/build" concept when the resulting contract is awarded pursuant to competitive bidding and includes architectural or engineering services as a component of the contract. The proposed design/build procedure described in Mr. Dozier's letter is therefore incompatible with competitive bidding laws.[3]

One argument marshalled in support of the design/build procedure is that it can result in significant savings to a county. Savings is, of course, one of the primary objectives of the competitive bidding apparatus. The courts, however, have recognized that when the acquisition of professional services is involved, competitive bidding may actually be detrimental to the public interest:

> To hold that the [competitive bidding] act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained . . . only through competitive bidding would give a ridiculous meaning to the act . . . . Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man . . . .

---

3. You do not ask and we therefore do not consider whether design/build contracts may be awarded without resort to competitive bidding because they include architectural or other professional services as a component of the contract. This opinion should not be read as tacit approval of such arrangements. See Superior Incinerator Co. of Texas v. Tompkins, 37 S.W.2d 391 (Tex. Civ. App. - Dallas 1931), aff'd, 59 S.W.2d 102 (Tex. Comm'n App. 1933, holding approved). Neither have you asked whether a design/build firm which prepares architectural or engineering plans or specifications for a public works project may submit a bid on the resulting construction contract. See Attorney General Opinions JM-940 (1988); JM-282 (1984).

Hunter v. Whiteaker & Washington, 230 S.W. 1096, 1098 (Tex. Civ. App. - San Antonio 1921, writ ref'd) (involving a contract for engineering services); see also Stephens v. J.N. McCammon, Inc., 52 S.W.2d 53 (Tex. 1932) (architectural services); Attorney General Opinion JM-940 (1988) (services of a construction management consultant).

The legislature has incorporated this thinking into competitive bidding statutes by enacting exemptions for professional services. See, e.g., Local Gov't Code § 262.024(a)(4). As for the services covered by article 664-4, the legislature has gone a step further by expressly prohibiting their procurement on the basis of competitive bidding. Thus, while it might be argued that competitive bidding statutes do not require, but at the same time do not forbid, contracts for architectural and engineering services to be awarded by competitive bids, article 664-4 affirmatively bars counties from awarding such contracts on that basis.

Taking into account Mr. Nemir's request, the third question becomes whether section 16 of article 249a or section 19 of article 3271a requires the preparation of architectural or engineering plans and specifications in advance of competitive bidding to serve as a foundation for bid specifications, or whether such plans may be prepared following the award of a design/build construction contract.

Section 16 of article 249a, effective January 1, 1990, provides the following:

> To protect the public health, safety, and welfare of the citizens of the State of Texas, an architect registered in accordance with this Act must prepare the architectural plans and specifications for a new building intended for education, assembly, or office occupancy whose construction costs exceed One Hundred Thousand Dollars ($100,000.00) which is to be constructed by a State agency, a political subdivision of this State, or any other public entity in this State.

Acts 1989, 71st Leg., ch. 858, at 3839. A county is a political subdivision of the state. Childress County v. State, supra.

Section 19 of the Texas Engineering Practice Act, V.T.C.S. article 3271a, provides the following:

(a) It is unlawful  for this State or  any of its political subdivisions, including  any county, city,  or  town,  to  engage  in  the construction of  any  public  work  involving professional    engineering,    where    public health, public  welfare or  public safety  is involved, unless  the engineering  plans  and specifications and estimates  have been  prepared by, and the engineering construction is to be executed  under the direct  supervision of  a    registered    professional    engineer. However nothing in this Act shall be held  to apply to  any public  work wherein  the  contemplated  expenditure    for   the    completed project  does  not    exceed  Eight    Thousand ($8,000.00) Dollars.

(b) This Act shall  not apply to any  road maintenance or betterment work undertaken  by the County Commissioners' Court.

Neither section 16  of article 249a  nor section 19  of article 3271a  by  its  terms requires  the  preparation  of architectural or engineering plans and specifications for  a construction project by a  licensed architect or  registered engineer  prior  to  competitive  bidding.   It  has   been suggested that  requests for  proposals  can be  drawn  with sufficient detail to  meet the  requirements of  competitive bidding  even  in  the  absence  of  detailed  plans   and specifications.   Alternatively,  it  is  argued  that  this question requires the resolution of fact issues that  cannot be accomplished in an opinion of the attorney general.

It is  quite true  that determination  of the  adequacy of bid specifications  in  a  given case  will  require  the resolution  of  fact  issues.   Indeed,  a  noted  authority cautions that since  it is sometimes  difficult to know  the detail to which drawings and specifications must be carried, competitive bidding requirements should be interpreted in  a manner that secures the object for which they were intended. 10 E. McQuillen, The  Law of Municipal Corporations  § 29.53 (1990  rev.).   According  to  this  authority,  it  is  not necessary that  plans and  specifications show  every  minor part or component of the structure to be built or product to be purchased, only that enough  detail appear as to make  it clear what  is intended  and  what result  is to  be  accomplished.   Id.   Another  authority,  on  the  other   hand, suggests that  detailed  design  specifications  are  better suited to construction projects than to product acquisition. The Council of State Governments, State and Local Government

Purchasing 45 (3rd ed. 1989). There are numerous Texas authorities which suggest that competitive bidding requires the preparation of detailed architectural and engineering plans prior to the invitation of bids for a construction project.

In his letter Mr. Dozier cites Headlee v. Fryer, 208 S.W. 213 (Tex. Civ. App. - Dallas 1918, writ dism'd), a case involving the award of a contract for the construction of a county courthouse based only upon "a tentative synopsis of specifications and pencil sketches of floor plans and a drawing of the building." He quotes language from the case describing the role of the commissioners court prior to inviting bids for construction:

> [I]t occurs to us that they are put to the necessity of being prepared to present to those who may appear to bid upon the contract some intelligent and concrete statement of the work required to be done or the structure to be erected as would tend to induce competition, depending in every instance upon the character of the undertaking.

208 S.W. at 216. The court emphasized that without a precise description of what the county required, no responsible contractor acting in good faith could bid on the project, and thus competition would be stifled. See also 35 D. Brooks, County and Special District Law § 18.7 (Texas Practice 1989).

In another case, a court upheld the action of a city board of commissioners that rescinded a contract for the construction of an incinerator that the board concluded had been awarded in violation of the city's competitive bidding ordinance. The specifications for the project contained several material omissions, including the size of the building to house the incinerator, number and dimensions of furnaces, size of flues, chimney dimensions, and number of stairways and doors.[4]    Superior Incinerator Co. of Texas

---

4. In fact, the specifications called for the prospective bidder to design the incinerator and to submit complete working drawings covering the design with the bid. The court, responding to this provision and citing numerous authorities, adopted a broad rule: "A competitive bidding
(Footnote Continued)

v. Tompkins, 37 S.W.2d 391, 396 (Tex. Civ. App. - Dallas 1931), aff'd 59 S.W.2d 102 (Tex. Comm'n App. 1933, holding approved). The court defined "specifications" as "not only the dimensions and mode of construction, but a description of every piece of material -- its kind, length, breadth, and thickness -- and the manner of joining the separate parts together." Id. at 395-396. It concluded that under these circumstances no complete specifications were drawn up and adopted prior to the advertisement for bids. Consequently, no two prospective bidders could bid on the same character of improvement, making competitive bidding impossible. Id. at 396.

Mr. Nemir cites Attorney General Opinion JM-282 (1984), where we were asked, among other things, whether a state university could solicit and receive competitive bids for the construction of permanent improvements before plans and specifications were completed, with only a general project description serving as a guide to potential bidders. After observing a distinction between bids for the actual construction of the improvements and offers to serve as construction management consultant for the project, we answered the question in the negative. Our answer was followed by these remarks:

> A general project description of incomplete plans and specifications will not furnish a sufficient basis on which competitive bids for the construction of a project can be received . . . . As noted in Attorney General Opinion H-24 (1973), a procedure does not result in competitive bids where bid documents leave to conjecture requirements governing the bids and only by happenstance would all interested bidders arrive at a common conclusion regarding their meaning. See also Attorney General Opinion MW-299 (1981). (Emphasis in original.)

---

(Footnote Continued)
statute is fundamentally violated where the bidder is asked to furnish plans and specifications, and an award made under such circumstances is void." Superior Incinerator Co. of Texas v. Tompkins, 37 S.W.2d 391, 397 (Tex. Civ. App. - Dallas 1931), aff'd 59 S.W.2d 102 (Tex. Comm'n App. 1933, holding approved).

The opinion then quoted the following language from <u>Sterrett</u> <u>v. Bell</u>, 240 S.W.2d 516, 520 (Tex. Civ. App. - Dallas 1951, no writ), cited with approval in <u>Texas Highway Comm'n v. Texas Ass'n of Steel Importers</u>, 372 S.W.2d 525 (Tex. 1963):

> 'Competitive bidding' requires due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. . . . There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project.

Admittedly, these authorities do not hold that final architectural and engineering plans and specifications must be drawn in advance of competitive bidding in every case, but they make it clear that a particular bidding procedure may be faulted for being non-competitive if detailed plans and specifications are not prepared in advance. Furthermore, the award of a contract on the basis of nothing more than a general project description might also alter the duties and liabilities of the public entity and the construction contractor. <u>Cf.</u> <u>Board of Regents of the Univ. of Texas v. S & G Constr. Co.</u>, 529 S.W.2d 90 (Tex. Civ. App. - Austin 1975, writ ref'd n.r.e.) (builder held not liable for delays in completion of construction resulting from owner's failure to provide builder with "correct plans and specifications" and additional instructions and detail drawings necessary to carry out work under contract; rather, owner found in breach of contract, entitling builder to damages).

Accordingly, neither section 16 of article 249a nor section 19 of article 3271a expressly requires the preparation of architectural and engineering plans and specifications prior to the invitation of bids by a county for a construction contract. But absent a provision to the contrary, such a requirement is implicit in competitive bidding statutes.

## S U M M A R Y

A commissioners court is prohibited by article 664-4, V.T.C.S., from awarding a "design/build" contract for the construction of a public work on the basis of competitive bidding where architectural or engineering services comprise a component of the contract. Neither article 249a, section 16, nor article 3271a, section 19, requires the preparation of architectural and engineering plans and specifications prior to the invitation of bids by a county for a construction contract. But absent a provision to the contrary, such a requirement is implicit in competitive bidding statutes.

Very truly yours,

*Jim Mattox*

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General