### T. K. HARRIS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### FAWCETT v. SAME (two cases).

### Nos. 8257–8259.

Circuit Court of Appeals, Sixth Circuit.

May 15, 1940.

John G. Ketterer, of Canton, Ohio (Lynch, Day, Pontius & Lynch and John G. Ketterer, all of Canton, Ohio, on the brief), for petitioners.

Harry Marselli, Sp. Asst. to Atty. Gen. (Sewall Key and Joseph M. Jones, Sp. Assts. to Atty Gen., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (38 B.T.A, 383) sustaining the Commissioner's determination of deficiency in income tax for the fiscal year ended March 31, 1932, in the amount of $1,164.43. A penalty of $583.69 was also assessed, but is not in controversy here.[1]

In 1930 the taxpayer contracted with the East Ohio Gas Company (hereinafter called the Gas Company) that the Gas Company should drill completed gas wells upon the taxpayer's real property. The contract provided that the Gas Company should bear the whole expense of the drilling, but that if gas was obtained, the proceeds from the sale of gas from each well was to be applied towards reimbursing the Gas Company for the "exact cost without overhead" of the drilling of that particular well. The Gas Company on its books credited the taxpayer's drilling account with the proceeds from each well and charged it against the expense of drilling that well. Under the contract, when the proceeds equaled the expense, the well and the equipment belonged to the taxpayer, and the Gas Company agreed to operate the well and buy the output under specified conditions. Six wells were drilled on the taxpayer's property, and all six were ultimately paid for out of gas produced, but none of them produced gas sufficient to pay the cost of drilling prior to the end of the fiscal tax year involved, and only three of them were in production at that time.

The Commissioner determined the deficiency by including in the taxpayer's gross income for the fiscal year the amounts credited to the taxpayer by the Gas Company, less operating expense and percentage depletion. The two issues presented here were decided by the Board in favor of the Commissioner. They are (1) whether the amounts credited to the taxpayer's account as proceeds of the gas produced from the three completed wells constituted income, and (2) if the amounts were income, whether, under Art. 236, Reg. 77, and the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A.Int.Rev.Acts, p. 475 et seq., the taxpayer could deduct from gross income the intangible drilling and development costs of all the wells during that period. The Board decided a further issue as to depreciation in favor of the taxpayer, and it is not involved in this appeal.

On the first point, the taxpayer contends that it did not receive income because no funds were in fact received by it during the fiscal year. The Board did not err in deciding that the amounts credited to the taxpayer's account and applied toward reimbursement of the drilling expense borne by the Gas Company, constituted income. While the proceeds from the gas produced were not paid directly to the taxpayer, they were actually applied during the taxable year on the purchase of each completed well. The possibility that the proceeds from the sales might not be sufficient to pay for the completed well, in which case, under the contract, the taxpayer would not be vested with title to the well, is immaterial. The controlling factor is that the taxpayer actually received, during the fiscal year, the benefit of the proceeds of the gas produced from wells driven on his land in which wells he had a property interest. This clearly constituted income from business, commerce, or dealings in property growing out of the use of and interest in such property. 26 U.S.C.A.Int.Rev.Code, § 22(a). Within the ruling in North American Oil Consolidated v. Burnet, Commissioner, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, the proceeds from the gas constituted profit earned by the taxpayer's property in the taxable year,

---

[1] The appeals of Howard B. Fawcett (No. 8258) and Enid W. Fawcett (No. 8259) involve transactions substantially identical with those of the instant case, for the fiscal year ended December 31, 1932. By stipulation of the parties, the record was printed only in the instant case, and the conclusion here will be determinative of the issues in the other two cases.

and therefore was income in that year. Cf. Reynolds v. McMurray, 10 Cir., 60 F.2d 843.

A more difficult question is presented by the taxpayer's contention that under the undisputed facts, it was entitled to exercise an option to deduct as expense the intangible drilling costs at any time up to the time that the proceeds from the sale of gas from the wells had reimbursed the Gas Company in full for the cost of drilling and development. The items of drilling expense were allocated between tangible and intangible drilling costs "in accordance with the regulations of the Commissioner of Internal Revenue." The record presents a table for each of the three wells in production during the taxable year, called "Division of Drilling and Development Costs into Tangible and Intangible Costs," which allocates certain amounts to expense as intangible costs and sets up for purposes of computing depreciation certain amounts as tangible costs. The taxpayer in its records presented sufficient specific data supporting the allocation.

The contention is based upon §§ 23 and 24 of the Revenue Act of 1932, the pertinent portions of which read as follows:

§ 23. "In computing net income there shall be allowed as deductions:

"(a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

§ 24. "In computing net income no deduction shall in any case be allowed in respect of—* * *.

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate * * *." 26 U.S.C.A.Int.Rev.Code, §§ 23(a) (1), 24(a) (2).

Art. 236 of Treas. Reg. 77, promulgated under the Revenue Act of 1932, and contended by the taxpayer to be applicable here, in its material portions provides:

"All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital ac-count. Such expenditures have for convenience been termed 'intangible drilling and development costs.' Examples of items to which this option applies are, all amounts paid for labor, fuel, repairs, hauling, and supplies, or any of them, which are used (A) in the drilling, shooting, and cleaning of wells; (B) in such clearing of ground, draining, road making, surveying and geological work as are necessary in preparation for the drilling of wells; and (C) in the construction of such derricks, tanks, pipe lines, and other physical structures as are necessary for the drilling of wells and the preparation of wells for the production of oil or gas. * * * Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement."

The taxpayer contends that the claimed deduction falls squarely within the provision of the Regulations above set forth. The Board held in substance that the expenses were incurred as payments for wells completed under so-called "turn-key" contracts;[2] that the payments therefore were made in the purchase of capital assets, and were not deductible from income.

The taxpayer, however, urges that within the Board's own decisions, the instant contracts are footage drilling contracts, and that therefore it is entitled to exercise the option. Cf. Fort Ring Oil and Gas Co. v. Commissioner, 30 B.T.A. 307, in which the Board said:

"Some of these wells were drilled upon contracts requiring a completed well, with equipment furnished by the contracting driller, in place and ready for production. Such drilling is referred to as 'turn-key drilling.' Petitioner caused other wells to be drilled upon its properties and paid therefor at so much per foot of well drilled, plus the cost of equipment. Such drilling is referred to as 'footage drilling.'"

Also in C. W. Titus, Inc. v. Commissioner, 32 B.T.A. 1222, the Board said:

"The evidence in the instant case discloses that only a very small percentage of wells are drilled under 'turnkey' contracts, that there is not any uniform con-

---

[2] Webster's New International Dictionary defines "turn-key job" as "Any job or contract in which the contractor agrees to complete the work to a certain specified point, and to assume all risk."

tract with respect to 'turnkey drilling', but that ordinarily 'turnkey' contracts mean those under which the drilling contractor is to drill and complete a well not to exceed a specified depth, the contractor furnishing everything, and for which he is to receive a specified amount of money."

In each of these cases the Board decided that in the footage drilling contract the option to deduct intangible costs as expense is available to the taxpayer. This distinction in the Board's decisions is based upon the theory that under a contract for completed wells, the purchaser receives assets which are just as much capital assets as if they were structures erected above ground. The payment for such completed wells, as pointed out by the Board, bears no resemblance to payments for wages, fuel, repairs, hauling, etc., which may be within the nature of ordinary and necessary expenses under Art. 243 of the Regulations. Old Farmers Oil Co. v. Commissioner, 12 B.T.A. 203.

In the instant case, the drilling was paid for on the footage basis. Thus the invoice of June 2, 1931, shows that drilling of 4,530 feet was done at $1.95 per foot. Similar invoices for each of the other two wells appear in the record. However, we think that the Board did not err in overruling this contention. As interpreted by the Commissioner, Art. 236, Treas. Reg. 77 does not cover the case where the taxpayer contracts for a completed oil well for a certain sum, doing no drilling himself. In such case the entire amount paid on delivery of the well should be capitalized and returned through depreciation and depletion allowances, and no part thereof is deductible for the current year on the theory that it is cost of drilling. A.R.R. 1234, I-2 Cum.Bull. 140 (1922). This practical construction of the regulations by the Treasury Department is given weight by the courts. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457.

Here the Gas Company contracted to furnish all labor and material. The price to be paid was the "exact cost without overhead." This, while not at the time a sum certain, was a sum which, when the well was completed, became definite and liquidated. The case therefore falls within the holding in J. K. Hughes Oil Co. v. Bass, Collector, 5 Cir., 62 F.2d 176. There the contract obligated the drilling contractor "to furnish all derricks, all necessary drilling equipment, machinery,

casing, cement and labor, in fact, every thing necessary to complete said well in a first-class workmanlike manner, including fuel and water, the owner not being obligated to furnish anything whatever in the way of labor, fuel, drilling supplies, or anything necessary for the completion of the well." The court held this to be a turnkey contract. Clearly this was in conformity to the regulations and the interpretation of the Treasury Department. While the instant case presents some features of the footage contract, this fact and the further circumstance that the cost and depth of the wells were not fixed in advance do not require the conclusion that the Board erred in its decision. The taxpayer contracted for a completed well, and to pay a sum which would be definite and ascertained at the end of the operation, doing no drilling itself. The operation resulted in a capital improvement, and thus fell within § 24 of the Revenue Act of 1932. The Board did not err in disallowing the deduction.

The decision of the Board of Tax Appeals is affirmed.