SMITHCO ENGINEERING, INC., an Oklahoma corporation, Appellant (Defendant),

v.

INTERNATIONAL FABRICATORS, INC., an Oklahoma corporation, Appellee (Plaintiff).

No. 88–66.

Supreme Court of Wyoming.

June 16, 1989.

Roger Cowan of Harris and Morton, Evanston, for appellant.

Timothy O. Beppler and Sharon M. Rose of Vehar, Beppler, Jacobson, Lavery & Rose, P.C., Evanston and Jack L. Brown of Patton and Brown, Tulsa, Okl., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

A subcontractor, Smithco Engineering, Inc. (Smithco), and its supplier, International Fabricators, Inc. (IFI), an equipment fabricator on Exxon Corporation's LaBarge gas plant construction project present this appeal. Diverse arguments developed, including performance, warranty and termination with awarded attorneys' fees under Oklahoma law also addressed. We affirm the judgment for the supplier in principle sum and reverse the award of attorneys' fees.

## ISSUES

Smithco comprehensively addresses the issues as whether:

I. * * * the court failed to give effect to the term "turnkey" as the term was used by I.F.I. and Smithco.

II. * * * there were express warranties made by I.F.I.

III. * * * I.F.I. effectively disclaimed express warranties and if not whether there was evidence, as a matter of law sufficient to establish breach of express warranty.

IV. * * * I.F.I. effectively limited its liability and remedies for breach of express warranty, and if not whether Smithco was entitled to incidental and consequential damages.

V. * * * award of attorneys fees as part of costs was error.

IFI restates each issue to apparently present the same inquiry from its perspective, except to add a sixth issue of appellate attorneys' fees.[1] We discern as issues of this case:

(1) sufficiency of the evidence to sustain the trial court as to "turn key" terminology and its contractual effect; (2) existence and breach of express warranties; (3) limitation clause and its effect on the relationship

---

1. Two concerns are created by brief which are noted for these appellate counsel and the practicing bar generally. First, Smithco, in direct disregard of the rules of this court, provided no references to the record for its statement of facts. W.R.A.P. 5.01(3). Future repetition in briefs filed with this court may result in disregard of all statements not supported by the required record reference. For what can happen, see *Hartford Acc. & Indem. Co. v. Travelers Indem. Co.*, 531 So.2d 1049 (Fla.App.1988), where the unreferenced brief was stricken. Second, IFI restated and mutated every issue. It is suggested that, if this court is expected to properly respond, the same subjects require attention. We all need to be on the same page. If IFI feels required to restate Smithco's issue, a comparison of terminology and explanation of needed divergences would be part of any preferable appellate brief writing.

As symptomatic, we note Smithco's issue four states:

IV. Whether I.F.I. effectively limited its liability and remedies for breach of express warranty, and if not whether Smithco was entitled to incidental and consequential damages.

and compares to IFI's issue four:

IV. Whether IFI satisfied its obligation under the limitations clause to repair or replace materials?

A. *The limitations clause was effective.*

B. *Smithco has failed to prove damages for breach of warranty.* [Emphasis in original.]

between the supplier and the purchaser; and (4) award of attorneys' fees resulting from purchase agreement litigation where attorneys' fees are statutorily provided in Oklahoma but not in Wyoming. The chief concern in relation to attorneys' fees is a conflict of law dilemma of whether statutory provisions for litigative attorneys' fees will follow the Oklahoma litigants and their dispute into another forum where a similar statutory provision or common law rule does not exist.

## FACTS

Smithco, an Oklahoma corporation, was a subcontractor on the Wyoming Schute Creek Exxon gas plant construction near LaBarge, Wyoming. The plant customizes $CO_2$ as the major ingredient of the produced natural gas for oil field secondary recovery uses and other purposes. The plant was a large facility costing more than a billion dollars to construct. As part of its portion of construction, Smithco needed approximately 22,000 square feet of movable louvers for construction of air-cooled heat exchangers for a total purchase price of $425,499.73. IFI, also an Oklahoma corporation, was in the business of providing louvers for industrial plant construction.

These parties negotiated through a bid process and struck a deal, referenced in the record by Quote No. I–2066 Rev. 2, dated October 16, 1984. A few days later, an amendment dated October 19, 1984 was made to the original agreement changing certain terms of the quotation which was duly accepted by IFI by written notation. Unfortunately, these documents lacked clarity about who had the responsibility to design to operational sufficiency for the weather extremes in Lincoln and Sweetwater Counties of high altitude, dry climate and, in the winter, very cold temperatures. At that time, IFI was the only known supplier, since a competitor, Dunlop, elected not to bid. The process for production and installation of the individual louver systems contemplated a multi-step procedure. First, all necessary components were manufactured or acquired and delivered to Smithco who, after receipt, arranged for

first one, then another, Salt Lake City firm to assemble them from the IFI parts which had been delivered unassembled in Tulsa, Oklahoma. The assembled units were then taken to the project for a third step installation at the Exxon plant in Wyoming.

Concerning the contract interpretation, two provisions occupied considerable attention during litigation. The last paragraph of the acceptance letter included the following:

> In addition I.F.I. will provide a turn key or total responsibility service to SMITHCO as required by but not limited to job specifications and notes, which will include documentation, instrumentation drawings, etc.

Invoice forms used by IFI as statements on the reverse of the printed form captioned General Terms and Conditions of Sale included:

> Seller warrants products it manufactures to be free from defects in material and workmanship under normal use and service when operated in accordance with conditions stated in the proposal, and will, within one year after shipment by Seller repair or replace without cost any Seller product (when returned with transportation charges prepaid, properly crated) which upon Seller inspection proves to be defective. This warranty is in lieu of all other warranties, liabilities and obligations expressed or implied, and any implied warranty of merchantability or fitness for use is expressly disclaimed. Warranty on products or accessories not manufactured by Seller is limited to warranty furnished by respective manufacturers. Seller assumes no responsibility for improper use, deterioration, erosion, corrosion, etc., or for any consequential damages. Any unauthorized attempt at local repairs voids the warranty. All capacities specified are based on our understanding of your requirements and on apparatus being properly installed and operated. Liability under the above warranty is limited to repair or, in our judgment, replacement of equipment or parts, F.O.B. our factory, after the equipment has been returned, inspected and found

defective by us. In no event shall we be liable unless written notice has been made upon discovery of defect and written acceptance made by us. Seller maintains facilities for customer representative to review and inspect equipment at our shop. Upon a signed receipt by customer representative prior to shipment, acceptance of the equipment is deemed to transpire.

Unfortunately for whatever reason, which was not made completely clear on this record, the assembled equipment did not work well following the fabrication into working units in Salt Lake City by Smithco's third-party contractors and after delivery to Exxon's Schute Creek plant. Corrective efforts were mutually attempted until IFI discontinued its participation and modification thereafter continued by Smithco through other avenues. Never completely satisfactory, changes were finally achieved, but qualified acceptance by Stearns–Roger for Exxon was derived after extensive expenditures by Smithco. From the sum of $425,499.73 total contract price, Smithco withheld payment from IFI of $112,566, who then sued. This appeal follows the trial court's ruling generally for the supplier in the resulting balance due litigation.

In the detailed findings of fact, the trial court found:

9. IFI did not design the louver, cable and actuator package, rather it was designed by Smithco using IFI promotional material and other information possessed by Smithco without the involvement of IFI.

\*    \*    \*    \*    \*    \*

12. The agreement between IFI and Smithco included the following items:

\*    \*    \*    \*    \*    \*

C. Except as noted in paragraph 14 below, the louvers, actuators, cables and other items supplied by IFI to Smithco were to conform to the drawings and specification furnished by Smithco.

D. The contract was turn key.

E. By the term "turn key", IFI and Smithco intended and understood that IFI was to marshal for delivery to Smithco the various louvers, actuators, cables and other items required by the contract.

F. Except as noted in paragraph 14 below, IFI expressly warranted to Smithco that the louvers, actuators, cables and other items would conform to the drawings and specifications furnished by Smithco.

G. IFI disclaimed any implied warranty that the louvers, actuators, cables and other items were fit for the use intended by Smithco.

H. Smithco's remedy for the breach of any warranty by IFI was effectively limited to the cost to repair or replacement of defective parts; Smithco was not entitled to recover consequential or incidental damages as the result of the breach of any warranty by IFI.

\*    \*    \*    \*    \*    \*

19. After receiving the purchase orders, IFI prepared approval drawings which contained the same information and designs supplied by Smithco through Smithco's purchase orders and louver lay-out drawings. IFI submitted the approval drawings to Smithco for review prior to manufacturing of the louvers. During this process, IFI did not design the louver system; rather the design for this system and the specification of the component parts was controlled by Smithco.

In summary, the trial court found that Smithco did design the system, that the design specifications were not sufficient, and that IFI did meet specification criteria, even if a workable unit was not produced after assembly. Furthermore, the trial court discerned that:

22. The testimony at the trial did indicate that there were some items supplied by IFI that did not conform to Smithco specifications. As to those items which did not conform to Smithco's specifications, IFI satisfied any Smithco claim in that IFI repaired or replaced those items which were not so conforming with conforming items.

As a result, Smithco owed IFI $112,566 plus interest and $35,000 as attorneys' fees for the collection litigation.

## SUFFICIENCY OF THE EVIDENCE

Exhaustive examination of the complex trial evidence, including blueprints, shop drawings and correspondence reveals a conflict as to who was to design and why that design did not work satisfactorily within the environment of the plant in southwestern Wyoming. We would find this entire subject subsumed within the inquiry of design responsibility and, with conflicting evidence, will accord the trial court the normal preference in affirmation.[2]

Our rule is that where the sufficiency of evidence is an issue we uphold the judgment if there is evidence to support it, and in so doing we look only to the evidence submitted by the prevailing party and give to it every favorable inference which may be drawn therefrom, without considering any contrary evidence.

*Hance v. Straatsma,* 721 P.2d 575, 578 (Wyo.1986). *See also Ruby Drilling Co., Inc. v. Title Guar. Co. of Wyoming, Inc.,* 750 P.2d 674 (Wyo.1988); *Eddy v. First Wyoming Bank, N.A.–Lander,* 750 P.2d 294 (Wyo.1988); *Alexander v. Phillips Oil Co. a subsidiary of Phillips Petroleum Co.,* 741 P.2d 117 (Wyo.1987); *Western Utility Contractors, Inc. v. City of Casper,* 731 P.2d 24 (Wyo.1986); and *Simpson v. Kistler Inv. Co.,* 713 P.2d 751 (Wyo. 1986).

■ Somewhat differently placed is the phrase "turn key" as found in the supply purchase agreement. As a well-established construction industry term, "turn key" means completion of the facility to operational status subject only to punch list and warranty item so that the purchaser can turn the key and commence occupancy or operation. *See TK Harris Co. v. CIR,* 112 F.2d 76 (6th Cir.1940), involving the turn key construction of an oil well; *Glassman Const. Co., Inc. v. Maryland City Plaza, Inc.,* 371 F.Supp. 1154, 1157 (D.Md. 1974); *Dachner v. Union Lead Mining & Smelter Co.,* 65 Nev. 313, 195 P.2d 208 (1948); *Robbins v. C.W. Myers Trading Post, Inc.,* 253 N.C. 474, 117 S.E.2d 438 (1960); *Waddle v. Gammel,* 305 P.2d 559, 563 (Okl.1956); and *Gantt v. Van Der Hoek,* 251 S.C. 307, 162 S.E.2d 267, 270 (1968). *Cf. Valentine v. Ormsbee Exploration Corp.,* 665 P.2d 452 (Wyo.1983), day work contract distinguished from hourly contract or turn key contract.

A turnkey project is one in which the developer builds in accordance with plans and specifications of his own architect subject to performance specifications for quality and workmanship, and with limited guidance for features as style of house, number of bathrooms, etc. 1 B.J. McBride & I. Wachtel, GOVERNMENT CONTRACTS § 9.120[12] (1980).

*Lincoln Services, Ltd. v. United States,* 678 F.2d 157, 158–59 n. 2, 230 Ct.Cl. 416 (1982), concerning a "turnkey design and construction contract." The requirements of minimum specifications do not prevent a contract from being turn key. *C & L Const. Co. v. United States,* 6 Cl.Ct. 791, 802 n. 4 (1984), *aff'd* 790 F.2d 93 (Fed.Cir. 1986).

■ However, with delivery of unassembled parts in Tulsa, Oklahoma, and the key to be ultimately turned in far away LaBarge, Wyoming, and the assemblers situated at plants near Salt Lake City, Utah, this court agrees with the trial court in this factual situation, regardless of the term's more normal meaning. Smithco did not establish a warranty of design by IFI considering the completion and installation by third parties on behalf of the subcontractor, Smithco. As Justice Holmes in *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918) astutely espoused: "A word is not a crystal, transparent and

---

**2.** Although not contested by either party, this court will apply the forum law of Wyoming as to the sufficiency of the evidence standard. See Restatement (Second) of Conflicts, § 135 (1971). *Cf. Harwell v. Westchester Fire Ins. Co.,* 508 F.2d 1245, 1247 (8th Cir.1974), *cert. denied* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 102 (1975) (where no conflict between federal and Arkansas sufficiency of the evidence standards was found, so Arkansas rules applied.)

unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." The use of the term "turn key" does not abrogate the general rule that the entire contract must be considered to determine the meaning. *Glassman Const. Co., Inc.*, 371 F.Supp. 1154; *Robbins*, 117 S.E.2d 438. Also, the express contract terms can control over any industry usage. *Glassman Const. Co., Inc.*, 371 F.Supp. at 1158. Thus when the acceptance letter's use of the expression "turn key" is read in conjunction with the job specification requirements, we conclude that the trial court correctly found no design responsibility assumed by IFI. Moreover, the design responsibility in even a usual turn key contract can be restricted.

> [T]he term "turn-key construction job" under the applicable case law imposes upon the contractor the responsibility for providing the design of the project and responsibility for any deficiencies or defects in design, **except to the extent that such responsibility is specifically waived or limited by the contract documents.**

*Mobile Housing Environments v. Barton and Barton*, 432 F.Supp. 1343, 1346 (D.Colo.1977) (emphasis added). Although the use of the word is unusual in accord with its normal definition, it is fair to accept the operational context that it, as found by the trial court, meant everything present necessary to put the package together to be a workable unit. This is unlike the situation faced by the Delaware Supreme Court in *Neilson Business Equipment Center, Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172, 1174 (Del.Super. 1987), where the purchaser and the supplier contracted that the "turn-key computer system" was to be both chosen and customized to the office's desired billing method by the supplier and was to "function immediately." We find no error by the trial

court in discerning "by the term 'turn key,' IFI and Smithco intended and understood that IFI was to marshal for delivery to Smithco the various louvers, actuators, cables and other items required by the contract." Both parties entered into the contract with their eyes wide open, aware of the distance, assembly, and installation variations from a usual turn key contract. Thus, this court will not rewrite the contract because of an alleged unilateral mistake. *See Glassman Const. Co., Inc.*, 371 F.Supp. at 1159.

■ The record does not reveal if IFI was actually a manufacturer of the parts or whether it simply assembled and packaged them except clearly, the cable and actuators were "spected parts"[3] purchased from third parties. Essentially, this wagon, when tendered, was only nuts, bolts and pieces of metal on delivery in Tulsa. It follows that if IFI did not design and did not assemble, its pricing charts were correctly found by the trial court to not create a fitness warranty for the assembled unit to be suitable for the LaBarge project. The use of the term "turn key" is not a guarantee, and even in a more conventional turn key sense, causation still must be shown between a system's malfunction and the actual supplier's work to prove a defect. *See Ray v. Strawsma*, 183 Ga.App. 622, 359 S.E.2d 376, 379 (1987), concerning an allegedly defective security system.

There is a more directed problem with the implied warranty disclaimer stated on the reverse of invoicing statements. Its publication by billing notice antedates the parties' sales contract. However, we will accept Smithco's analysis of the disclaimer in relation to this issue as stated in its brief:

> The court below found that Appellee effectively disclaimed any **implied** warranty of fitness for a particular purpose. [A]ppellant disagrees with this finding. The only disclaimers were on the back of

---

**3.** The characteristics, supplier and size, as well as supplier designation were required in the plans, specifications or shop drawings with the "equal or better" substitution qualification. "Spected" means defined by specifications and plans. It was in the specification and description of these items as to sizing and consequent capacity from which considerable controversy developed. The actuators, constituting the motors for panel movement, were apparently initially underpowered.

billing invoices sent to Appellant **after** the agreement was finalized in October, 1984.

"Both historically and under the Code, the time for determining the terms of the contract is when the bargain is struck. Disclaimers of warranty are no different. Therefore, unless the disclaimers are disclosed prior to the agreement and agreed upon, thereby made part of the contract, they are not binding." *Van Den Broeke v. Bellanca Aircraft Corp.*, 576 F.2d 582, 584 (5th Cir.1978)

While the above is of concern, it should make no difference in the instant case, because Smithco is not relying upon **implied** warranties, which the court below found to be disclaimed, whether or not such a finding is correct. Smithco relies upon express warranties. Even if the disclaimer relied upon by the court below was effective, it would not control, in the face of express warranties. [Emphasis in original.]

Our answer in acceptance of the posture taken by Smithco as to the effectiveness of the disclaimer under the circumstance is also taken with the acceptance of the instructional posture of the trial court that, lacking a design or assembly contract, express warranties were not created **under these circumstances.** With recognition that the trial court expressly found as a fact that non-conforming material was repaired or replaced, any further departure to reach an award for Smithco on its counterclaim is not demonstrable as trial error requiring reversal.

We hold that the findings of fact upon which the judgment was granted are supported by substantial evidence within the

compendium of the evidentiary disputes of the participants. Consequently, the judgment is affirmed as to the contract payment dispute.

## ATTORNEYS' FEES

The last issue presented is a conflict of law and forum dispute of whether these two Oklahoma corporations brought the Oklahoma attorneys' fees—court costs statute [4]—to Lincoln County, Wyoming where IFI filed this action to foreclose on a mechanic's lien and recover for the sale of the louver parts. The trial court found the Oklahoma statute provided a substantive right and by contract situs in that state which was to be applied in Wyoming. This resulted in an award to IFI of $35,000 in attorneys' fees. Wyoming provides no comparable statute and case law is explicit in delineation that attorneys' fees cannot be awarded in the absence of an agreement between the parties [5] or an explicit statute justifying the award. *Bowers Welding and Hotshot, Inc. v. Bromley*, 699 P.2d 299 (Wyo.1985).

The subject raises two separate inquiries under the conflict of law configuration. First is whether a statutory provision of this kind is procedural or substantive, and second is whether the decision of the statute's procedural or substantive character is to be made under the law of the situs or the law of the forum. To analyze this area, a converse of the inquiries will be pursued.

The *lex fori*, or forum court, determines a statute's character. *Glick v. White Motor Co.*, 317 F.Supp. 42, 45 (E.D.Pa.1970), *aff'd* 458 F.2d 1287 (3d Cir.1972); *American Physicians Ins. Co. v. Hruska*, 244

---

**4.** Okla.Stat.Ann. tit. 12, § 936 (West 1988) states:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs. [Footnote omitted.]

**5.** *See* Annotation, *Enforceability of Provision in Agreement for Attorneys' Fees, Valid in State of its Execution or Performance, But Invalid Under Law of Forum*, 54 A.L.R.2d 1053 (1957). Oklahoma law is identical to Wyoming in application of the rule that "costs do not include attorney's fees except when a statute expressly provides for them." *Hicks v. Lloyd's General Ins. Agency, Inc.*, 763 P.2d 85, 86 (Okl.1988). The difference is that Oklahoma has the enabling statute for contractual collection costs which Wyoming does not.

Ark. 1176, 428 S.W.2d 622, 627–28 (1968); *St. Louis–San Francisco R. Co. v. Cox,* 171 Ark. 103, 283 S.W. 31 (1926); *Neve v. Reliance Ins. Co. of Philadelphia,* 357 S.W.2d 247, 250 (Mo.App.1962); R. Leflar, The Law of Conflict of Laws § 58 (1959). "[T]he law of the forum normally determines for itself whether any particular rule of law, local or extra-state, is to be characterized as procedural or substantive." R. Leflar, *supra,* § 60 at 110. The basis of the procedural-substantive distinction is that the rule of comity generally applies only to substantive rights and not remedies. *Neve,* 357 S.W.2d at 250.

It is a widely settled principle of the doctrine of interstate comity that foreign laws will not be given effect when contrary to the law, or public policy, or general interest of the citizens of the state of the forum.

*Severn v. Adidas Sportschuhfabriken,* 33 Cal.App.3d 754, 109 Cal.Rptr. 328, 333 (1973), concerning conflicting service of process statutes.

■■■■■ Wyoming has recognized the common law rule that only if a statute is deemed to be substantive will the forum court apply the foreign statute. *Duke v. Housen,* 589 P.2d 334, 341, *reh'g denied* 590 P.2d 1340 (Wyo.), *cert. denied* 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). Clearly, the law of the forum controls procedural matters. *American Physicians Ins. Co.,* 428 S.W.2d at 628; *Billingsley v. Lincoln Nat. Bank,* 271 Md. 683, 320 A.2d 34, 35 n. 1 (1974); *Satterwhite v. Stolz,* 79 N.M. 320, 442 P.2d 810, 815 (1968); E. Scoles & P. Hay, Conflict of Laws § 3.8 at 58 (1984). *Cf. Connell v. Delaware Aircraft Industries,* 44 Del. 86, 55 A.2d 637, 640 (1947), where that court suggested that modification of the common law rule may be necessary if the matter sought is "so inseparably interwoven with substantive

rights." While the difference between substantive and procedural law may not be easy to determine, it is generally held that substantive law relates to the cause of action's rights and duties, whereas procedural law involves " 'the machinery for carrying on the suit.' " *Roth v. Roth,* 571 S.W.2d 659, 672 (Mo.App.1978) (quoting *Shepherd v. Consumers Co-op. Ass'n,* 384 S.W.2d 635, 640 (Mo.1964)). *See also Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377 (1937).

■■■■ We find the trial court erred in determining the judgment assessment of attorneys' fees was substantive which would define forum right from foreign jurisdiction cost taxation statutes.[6] *See also Feinsod v. L. & F. Const. Co.,* 17 N.J.Misc. 65, 4 A.2d 692, 694, *cert. denied* 123 N.J.L. 149, 8 A.2d 110 (1939), *modified* 124 N.J.L. 173, 10 A.2d 728 (1940), finding imposition of attorney fees to be procedural. This case is similar to *Taylor v. Security Nat. Bank,* 20 Ariz.App. 504, 514 P.2d 257, 261 (1973), where the Arizona Court of Appeals applied the law of California to the contract interpretation, but applied Arizona law to the requirement of the evidence to prove reasonable attorney's fees when California and Arizona law differed on that point. *Cf. Grace v. Allen,* 407 S.W.2d 321, 325 (Tex. Civ.App.1966), which is the converse of the instant case; the Texas court applied New York substantive law to the contract which did not allow attorney's fees, but awarded attorney's fees under the Texas statute.

We are buttressed in our view by the fact that Oklahoma recognizes that the assessment of attorney's fees as costs under Okla.Stat.Ann. tit. 12, § 936 (West 1988), which is part of the Oklahoma Civil Procedure Code, is procedural. *Cox v. American Fidelity Assur. Co.,* 581 P.2d 1325, 1327 (Okl.App.1977); *Jeffcoat v. Highway Contractors, Inc.,* 508 P.2d 1083, 1087

---

**6.** This court is not unaware of the complexities engendered by the application of F.R.C.P. 68, Offer of Judgment. F.R.C.P. 68 is very similar to W.R.C.P. 68 in attribution of attorneys' fees as costs in the unattained offer of settlement cases. *See Marek v. Chesny,* 473 U.S. 1, 105

S.Ct. 3012, 87 L.Ed.2d 1 (1985) and Margulies, *After Marek, the Deluge: Harmonizing the Interaction Under Rule 68 of Statutes that Do and Do Not Classify Attorneys' Fees as "Costs",* 73 Iowa L.Rev. 413 (1988).

(Okl.App.1972). *Cf. Guardian Life Ins. Co. v. Dixon*, 152 Ark. 597, 240 S.W. 25 (1922), where the Texas attorney's fee statute was similar to the Arkansas one, so the Arkansas court enforced the Texas statute.

In *Neve*, 357 S.W.2d at 249–50 the Kansas City Court of Appeals held that although the parties agreed to interpret the contract under Kansas law, it was not a waiver of the rule that the case would be tried in a Missouri forum under Missouri procedural law. "Absent something binding to the contrary, a litigant is not entitled to insist upon the trial of his rights or defense under the procedural laws of a sister state rather than under the procedural laws of the forum state. *Lynde v. Western & Southern Life Ins. Co.*, Mo.App., 293 S.W.2d 147, 150 [1956]." *Neve*, 357 S.W.2d at 249. Similarly, IFI cannot insist that the procedural Oklahoma attorney's fees statute be applied by Wyoming courts. Having chosen the forum, IFI has implicitly chosen the procedural law that accompanies the forum court.

Additionally, IFI asks for appellate attorneys' fees. Finding the Oklahoma statute to be procedural in relation to the trial attorneys' fees, we decline to award attorneys' fees for the appeal.

### CONCLUSION

The use of the term "turn key" in this case is not a magical absolver; there was substantial evidence to support the trial court's conclusion that IFI was merely a supplier of the goods so no breach of design warranty was present. No breach of express warranty existed since IFI repaired or replaced the non-conforming goods. However, the trial court's application of the Oklahoma attorney's fees statute was in error. Therefore, the judgment for the supplier on the contract balance will be affirmed, but the imposition of trial attorneys' fees will be reversed. This court declines to award appellate attorneys' fees.

Affirmed in part and reversed in part.

GOLDEN, J., files a specially concurring opinion with whom CARDINE, C.J., joins.

THOMAS, J., files a concurring and dissenting opinion.

GOLDEN, Justice, specially concurring, in which CARDINE, Chief Justice, joins.

I concur in the result in this case, but would have used a more straightforward analysis to hold in favor of International Fabricators, Inc. I prefer that the majority opinion be written so that members of the Wyoming Bar will have no difficulty determining how it fits into our established rules of construction for contract terms.

I would have analyzed this case using the following standards of appellate review. As a matter of law, this court determines whether a written contract term is ambiguous by independently reviewing the disputed term in light of the actual language of the entire contract. *State Farm Fire and Casualty Company v. Paulson*, 756 P.2d 764, 766 (Wyo.1988); and *Bethurem v. Hammett*, 736 P.2d 1128, 1136 (Wyo.1987). A term is ambiguous if, considered in light of the plain language of the entire contract, it is susceptible to more than one reasonable meaning. *State Farm*, 756 P.2d at 766; and *Farr v. Link*, 746 P.2d 431, 433 (Wyo.1987). When an ambiguity is found, its presence justifies examining extrinsic evidence to determine the reasonable intention of the parties. *State v. Pennzoil Company*, 752 P.2d 975, 978–79 (Wyo.1988). When extrinsic evidence is considered in this context, the interpretation of the ambiguous term becomes a mixed question of fact and law, which is best answered by the trial court in most circumstances. *Kilbourne–Park Corporation v. Buckingham*, 404 P.2d 244, 246 (Wyo.1965). Further, ambiguous contract terms are generally construed against the party who drafted the written agreement. *Pennzoil*, 752 P.2d at 979–80.

Applying these fundamental standards here, we could easily have adopted the trial court's finding that the phrase "turn key" was ambiguous as a matter of law, thereby

requiring consideration of extrinsic evidence. We then could have reiterated the extrinsic evidence as considered by the trial court that Smithco's employee authored the October 19, 1984 letter containing the disputed terms and deferred to the trial court's interpretation of the mixed question of fact and law before it. I would have reached the majority's result by affirming what appears to be the trial court's use of this fundamental analysis.

THOMAS, Justice, concurring and dissenting.

I agree with that aspect of the court's opinion which affirms the judgment in favor of International Fabricators, Inc. I disagree with that portion of the majority opinion which denies the award of attorney fees. In my judgment, the trial court should be affirmed in all respects.

I am disposed to read differently from the majority the provisions of Okla.Stat. Ann.Tit. 12, § 936 (West 1988). While that section may be included within that part of the statutes relating to procedure in Oklahoma, the language providing that "[i]n any civil action to recover on * * * [a] contract relating to the purchase or sale of goods, wares, or merchandise * * * unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, * * *" articulates a substantive right. That conclusion is particularly appropriate in this instance since the contracting parties both were residents of the state of Oklahoma, and it is reasonable to assume that they contemplated Oklahoma law in the formation of their contract.

The majority cites *Bowers Welding and Hotshot, Inc. v. Bromley,* 699 P.2d 299 (Wyo.1985), for the proposition that attorney fees cannot be awarded unless the parties so provide by their agreement or there exists an explicit statute justifying the award. This court has said that a statute that affected the rights of the parties "became a part of the contract as though written into its terms." *Meuse–Rhine–Ijssel Cattle Breeders of Canada, Ltd. v. Y–Tex Corporation,* 590 P.2d 1306, 1309 (Wyo.1979) (the statute involved was the U.C.C.); see *Century Ready–Mix Company v. Lower & Company,* 770 P.2d 692 (Wyo.1989). In two other instances, the court has noted that "laws which subsist at the time and place of making a contract, and where it is to be performed, enter into and become a part of it as though expressly referred to and incorporated in its terms." *Tri–County Electric Association, Inc. v. City of Gillette,* 584 P.2d 995, 1007 (Wyo.1978); *Application of Hagood,* 356 P.2d 135, 138 (Wyo.1960). While those cases did not involve attorney fees, the principle is apt, and the quotation alludes to two places, the time and place of making the contract and the time and place where it is to be performed.

Consequently, I would not reverse the district court with respect to the award of attorney fees on the basis of whether the statute is substantive or procedural, although I do perceive it as substantive. In my view, the Oklahoma statute, where the contract was made, became a part of this contract. The rule is consistent with the substantive law of the state of Wyoming and cannot be perceived as being contrary to the public policy of this state. I, therefore, would hold that the Oklahoma statutory provision for attorney fees became a part of the contract of these parties and, for that reason, I would affirm the district court in its award of attorney fees to International Fabricators, Inc.